ANDRE PALUEL DE MARMON ET AL., PROSECUTORS, v. BOROUGH OF ROSELLE ET AL., RESPONDENTS.

Argued October 9, 1930—Decided November 24, 1930.

Before Justices CAMPBELL and BODINE.

For the prosecutors, *Spaulding Frazer.*

For the respondents, *R. Robinson Chance.*

PER CURIAM.

This writ brings up for review an ordinance of the borough of Roselle providing for the construction of a bridge on West Fifth avenue over a cut in which are located the tracks of the Baltimore and New York railroad and also the assessments for benefits placed against the lands of the prosecutors because of the erection of such structure.

The reasons advanced by the prosecutors may conveniently be considered under two heads; those directed at the ordinance and those directed at the assessments.

Those directed at the ordinance:

1. The first ground urged in this direction is that the prosecutors did not have notice of the introduction and adoption of the ordinance for the reason that such notices were published in an obscure local newspaper; that they were not residents of the borough and they received no notice by mail although the statute so required, and their post-office addresses were known to the borough authorities for the purpose of mailing tax bills.

We are compelled to conclude that this point is not well taken in view of the holdings of this court upon the same question in *Christie* v. *Bergenfields*, 8 *N. J. Mis. R.* 629; *Deamer* v. *Bergenfields*, *Ibid.* 627; *Specht* v. *East Orange*, *Ibid.* 647.

The prosecutors attempt to negative such findings and insist that they should be overruled because of an earlier ruling in this court in *Root* v. *Jersey City*, 5 *N. J. Mis. R.* 973, upon the ground that the later holdings do not override this earlier adjudication. We think that they do not overrule it, but, in fact, sustain it. We conclude, therefore, that this point is not, in law, well taken, but that we are bound by the former pronouncements in these cases.

2. It is further urged that the ordinance must be set aside because it attempts to provide for an improvement which is beyond the power of the governing body.

It is urged that although general power of erecting such structures exists, nevertheless, here the initial duty to construct and maintain rested upon the Baltimore and New York Railroad Company under section 26 of the Railroad act (3 *Comp. Stat., p.* 4231), and consequently there was no power in the respondent to erect the structure at public expense.

Several reasons are advanced by the respondents why this attack upon the ordinance is unsound.

It appears from the arguments of counsel that the question of responsibility to erect the structure is to be determined by the question of whether or not West Fifth avenue was a public highway at the time the railroad was constructed.

We think this is not so.

Section 26 of the Railroad act, *supra,* provides:

"It shall be the duty of every railroad company * * * to construct and keep in repair good and sufficient bridges and passages, over, under and across the railroad or right of way, where any public or other road, street or avenue, *now* or *hereafter laid* shall cross the same, so that public travel on said road shall not be impeded thereby * * * provided, that this section shall not enlarge the duty imposed by its charter upon any railroad company incorporated by special act and whose railroad was constructed before the second day of April, eighteen hundred and seventy-three."

By a stipulation in the state of the case (page 131), it appears: "* * * That the Baltimore and New York Railroad Company was incorporated under the General Railroad law * * * [act of April 2d, 1873, and supplements] the certificate of incorporation being dated October 27th, 1888, * * * and that its railroad was constructed in 1889 and 1890."

It seems clear, therefore, that the railroad does not come within the proviso of this section, but that by the plain language thereof the duty to erect and maintain bridges rests upon the company, not only at the crossings of roads existing at the time of its construction, but also such as shall be "hereafter laid."

We do not find, and our attention has not been called to anything limiting or curtailing this duty, unless, perhaps, it may be section 498 of the Road act (4 *Comp. Stat., p.* 4597), making it unlawful "for the surveyors of highways or other body having the power to lay out or vacate public roads in this state, to lay out or locate a public road across such railroad and tracks within a distance of five hundred feet of such other public road or crossing * * *."

Nothing of this character appears in the case before us.

The respondents further urge, notwithstanding the foregoing, that the borough had legal authority to cause the construction of such bridge:

1. Because it contracted with the railroad company so to do under authority of section 30 of an amendment to the Railroad act of 1903. *Pamph. L.* 1925, *p.* 377.

We are, however, unable to discover any applicability of this statute to the situation presented by the present case.

2. That, as the result of a joint application of the borough and the railroad company, the board of public utility commissioners approved of the building of the bridge by the borough.

It is strenuously urged upon us by the respondents, that the power bestowed by the legislature upon the board of public utility commissioners to regulate the operation of railroads and protect and abolish grade crossings, is a general legislative scheme superceding previous statutory regulations. The cases cited preclude any other rational conclusion, but this particular proceeding before the board did not have to do with the protection or abolition of a grade crossing and the board made no such finding. What it did do, so far as we can see, was simply to give its permission to the erection of the proposed structure. We are unable to understand how this lifted a legal burden from the railroad and placed it upon the borough, or, indeed, in anywise settled the question of duty to construct as between the parties.

3. That the borough had power to construct the bridge under subdivision E2, section 1, article 20 of the Home Rule act as amended. *Pamph. L.* 1924, *ch.* 206, *p.* 433.

The provision relied upon is:

"1. A local improvement is one, the cost of which or a portion thereof, may be assessed upon lands in the vicinity thereof benefited thereby. Every municipality may undertake any of the following works as a local improvement. * * * (E2) The constructing, reconstructing, improving and reimproving bridges and viaducts."

We think the power to authorize the construction of bridges and viaducts, in connection with the duty and power to open,

widen, alter, vacate, and generally, control streets and public highways, must be conceded to have been effectually lodged in the municipality by this legislation.

' Whether this power and authority extends to cases as here, where the primary obligation to construct is cast upon a railroad company; whether it exists in the municipality only where duty and power both exist, or whether it exists with such force and to such extent that the governing body may exercise its judgment and discretion in going forward with the construction even though the initial duty is upon the railroad, may be open and debatable questions which, because of our conclusion upon the next ground urged by the respondents, it seems to be unnecessary for us to decide. In fact our conclusions upon all of the grounds urged and passed upon up to this point very likely become mere *dicta*.

The respondents urge that the prosecutors may not be heard to complain because they are in laches in obtaining the present writ in that they delayed obtaining it until the improvement had been completed, public moneys expended therefor and assessments for benefits levied and confirmed.

Section 56 of article 20 of the Home Rule act, as amended (*Pamph. L.* 1921, *p.* 511), is relied upon. This provides that no writ of *certiorari* shall be allowed or granted to review or set aside any ordinance for any improvement after the contract therefor shall have been awarded or to review any assessment after thirty days have elapsed from the date of ·confirmation.

The contract for the construction of the bridge was awarded August 5th, 1927, and the assessments were confirmed April 9th, 1930. A rule to show cause why a writ should not issue was allowed and the writ was allowed May 15th, 1930.

The proceedings to obtain the writ, so far as it is directed at a review of the assessments, were, no doubt, timely, but on the contrary that was not so with respect to the improvement ordinance.

The prosecutors urge, however, that this statutory restriction, before referred to, has no application to the present proceeding because a constitutional right of theirs would be

invaded inasmuch as they had no notice, actual or constructive, of the adoption of the ordinance.

There is no attack made upon the regularity of the proceedings in respect to the introduction and passage of the ordinance except that no notices were mailed to the prosecutors. We have already found, under the cases cited, that this did not constitute such a defect in the proceedings as to permit, or require, a setting aside of the ordinance. Prosecutors had constructive notice through the newspaper publications. It has been held (*Cook* v. *Allendale*, 79 *N. J. L.* 286 and *United Owners Realty Company* v. *Lodi*, 99 *Id.* 529, and the authorities they cite), that such a limitation of the time for review by *certiorari* is within legislative authority except in cases where the statute providing for the improvement or assessment is, itself, unconstitutional. This is not so here and, in fact, such a contention is not advanced or urged.

We conclude, therefore, for this reason, the writ should be dismissed so far as it is directed at a review of the improvement ordinance.

This brings us to a consideration of those attacks of the prosecutors that are directed at the assessment proceedings and the assessments themselves.

Those directed at the assessments:

1. That the governing body of the borough fixed and established no tentative area of assessment for the improvement.

The prosecutors preface their argument upon this point by the statement, or admission, that the Home Rule act, nowhere, by direct provision, requires the governing body to make a determination of the assessment area of an improvement which in its opinion contains the lands that will be subject to assessment for special benefits flowing from the improvement.

An examination of the statute confirms this statement and we are brought to the conclusion that not only is there no such statutory requirement but, on the contrary, no such power can reasonably reside in the governing body but from and for practical necessity must reside in the commissioners of assessment.

We conclude, therefore, that this reason is not well founded.

2. The next point is that the lands of the prosecutors are not within the vicinity of the improvement as contemplated by the statute.

This appears to us to be entirely a question of fact and a matter requiring the exercise of judgment and discretion upon the part of the assessment commissioners, who have found against the prosecutors with respect thereto, their judgment affirmed by the borough authorities in confirming the assessments, and if an error with respect thereto has taken place to the injury of the prosecutors, they have full and ample opportunity to obtain relief and secure a correction by the right of appeal to the Circuit Court given them by the statute.

3. This ground is closely connected with the preceding ground and is that prosecutors' lands were not only not in the vicinity of the improvement but were of such a character that they could not be benefited. In support thereof *Beattie Manufacturing Co.* v. *Little Falls Township,* 7 *N. J. Mis. R.* 161 is cited. But we think that case is not in point with the facts in the present case. There it, uncontrovertedly, appeared that, because of the physical situation and location of the land, it was impossible for it to receive any special benefit from the construction of a sewer. Here the situation is fundamentally and radically different, inasmuch as the question whether prosecutors' lands are specially benefited and, if so, to what extent, is a matter of open fact and sound judgment. Under such circumstances prosecutors' remedy is by appeal to the Circuit Court.

4. It is next urged that both the ordinance and the assessments must fall because the ordinance provides "that the cost and expense of said improvement herein provided for and to be made hereunder shall be justly and amicably assessed upon lands in the vicinity thereof benefited thereby, in the manner and to the extent and in the proportion provided by law," whereas the statute provides that the cost shall be assessed "justly and equitably." This contention seems to us to be

devoid of merit. The word "amicably," most evidently, was erroneously employed in place of the word "equitably," but it is explained and qualified and we think legally corrected by the language of the ordinance immediately following, namely: "in the manner and to the extent and in the proportion provided by law."

5. The next ground is: "The assessments are wholly unreasonable and improper."

What is urged under this point is that properties located to the northeasterly side of the bridge have not been assessed, but that the assessments have been solely confined to properties to the southwesterly side, including those of the prosecutors. Respondents' reply to this is that the prosecutors have taken an appeal from the assessments levied against their lands to the Circuit Court under *Pamph. L.* 1925, *p.* 233, and that they have a complete remedy in respect to this complaint by such proceeding. But the prosecutors say that upon the facts established, and now before this court, a fundamental legal error upon the part of the assessment commissioners is presented and that their sole remedy is in this court by and through the present writ of review, and in support thereof urge *Gross* v. *Jersey City,* 99 *N. J. L.* 457.

But we think and conclude that the situation presented here is not analogous to that presented in the case cited. It may well be that a landowner is entitled to a diminution of the actual amount of benefit received by his lands through an extension of the assessment area, but proceedings of this character cannot be made "dollar perfect." And we are unable to see that upon appeal to the Circuit Court just such a situation as here complained of does not become pertinent and a necessary and proper element to be inquired into in determining whether the assessment appealed from "is a just and fair award." Both the letter and spirit of the act providing for such appeal is to this effect, because it clothes the Circuit Court with power and directs it to make inquiry into all matters relating to the "justness and fairness" of the award and to reduce or correct the assessment. So it was held in *Graham* v. *Ocean City,* 98 *N. J. L.* 426; *Breckenridge* v.

*Newark,* 94 *Id.* 361; *Burstiner* v. *East Orange,* 4 *N. J. Mis. R.* 280; *affirmed,* 103 *N. J. L.* 174. If the Circuit Court acts without facts to support its findings or proceeds to judgment upon erroneous legal principles, its judgment is then open to review and correction by this court.

6. The next ground is, "the appointment of the commissioners of assessment was so illegal as to void the assessments made."

Here it is urged:

(a) That the statute *(Pamph. L.* 1918, *p.* 485, *art.* 20, § 18) provides: "The governing body may, by resolution, upon the completion of any local improvement, appoint three discreet freeholders, who shall be residents of the municipality and in no way interested in such improvement," and that the record in this case shows that the assessment commissioners were not appointed by resolution of the governing body, but by the mayor, and his action concurred in by the governing body.

Now the return to the writ shows that at a meeting of the mayor and council held November 16th, 1928:

"The mayor appointed the following assessment commissioners subject to confirmation by council. Fifth avenue bridge. F. L. Hanks, F. E. Nodocker, F. C. Manley.

Councilman Moore moved that appointments be confirmed, seconded by Councilman Hill, and duly carried."

This, of course, is not in strict compliance with the statute, but the result is the same, or substantially so, and we see no reason why the assessments, for this technical variance, should be set aside.

(b) That nowhere, upon the face of the proceedings, does it appear that the commissioners were discreet persons.

We are at loss to see how this could be made to appear otherwise than by the result of the work of the commissioners. For the nominator to have so declared, or the resolution of appointment to have so stated, would have been merely a statement of opinion. The oath of office taken by each commissioner containing such an averment would have amounted to nothing more.

We conclude that there is nothing in this ground warranting a setting aside of the assessments.

(c) It does not appear that the assessment commissioners were impartial.

It is true that the cases cited by the prosecutors (*Brewer* v. *Elizabeth,* 66 *N. J. L.* 547; *State* v. *Newark,* 25 *Id.* 399, and *Batchelor* v. *Avon-by-the-Sea,* 75 *Id.* 449, and the cases cited under each) hold that the commissioners must be shown, somewhere in the proceedings, either in the proceeding to appoint, oath of office or otherwise, that they are possessed of the qualifications required by the statute authorizing their appointment, otherwise the assessments made by them will be set aside.

There are three qualifications laid down by the statute (*Pamph. L.* 1918, *p.* 485, *art.* 20, § 18), namely: They must be discreet freeholders resident in the municipality and not interested in the improvement. The qualification as to discreetness we have already disposed of.

Prosecutors complain that they are·not disinterested because some one or more of them were members of the borough council during the time the improvement was undertaken and carried on, and some one or more of them is an owner of real estate in an area not assessed but which should have been assessed.

We may here say that the requirement of these cases that the qualification as to impartiality must be shown somewhere in the proceedings appears to have been met and formally satisfied by their respective oaths of office (state of case, page 31, *et seq.*), and their oaths attached to their report. (State of case, p. 29.) It does not appear that they are freeholders of the borough but this does not seem to be urged to the contrary by the prosecutors.

Prosecutors in citing section 18, article 20 (*Pamph. L.* 1918, *p.* 485), did not quote the section in full. There should be added to it this: "* * * none of the commissioners shall be disqualified by reason of the fact that they or any of them may own a property or properties included in such assessment." This disposes of the contention that any one that may own property so situated is disqualified.

Further, section 30, article 20 of the Home Rule act (amended 1924, p. 505) concludes as follows:

"* * * All assessments for local improvements shall be presumed to have been regularly assessed and confirmed, and every assessment or proceeding preliminary thereto shall be presumed to have been regularly made or conducted until the contrary·be shown."

This seems to us to reach to the qualifications of the assessment commissioners and to effectively dispose of all the reasons urged against them.

Finally, the prosecutors suggest that there are other grounds set forth in their reasons filed in the case which are not specifically referred to or argued and that it is not, for that reason, to be taken that they are abandoned.

However, it is too well known to require citation of authority that reasons filed and not argued are abandoned.

We conclude, therefore, that the proceedings brought up for review must be affirmed and the writ dismissed, with costs.